No. 25-5579

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

CONNIE L. REGULI; WENDY HANCOCK,

*Plaintiffs-Appellants,*

v.

TRACY HETZEL; LORI RUSS; DAVID O'NEILL; CITY OF BRENTWOOD, TN;
ESTATE OF KIMBERLY HELPER; MARY KATHERINE EVINS,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Middle District of Tennessee
No. 3:24-cv-00541

# APPELLEE'S BRIEF FOR ESTATE OF KIMBERLY HELPER
# AND MARY KATHERINE EVINS

Jonathan Skrmetti
  *Attorney General & Reporter*
J. Matthew Rice
  *Solicitor General*
Mary Elizabeth McCullohs
  *Senior Assistant Attorney General*
Jacobs M. Gilbert
  *Assistant Attorney General*

OFFICE OF THE TENNESSEE
ATTORNEY GENERAL & REPORTER
P.O. Box 20207
Nashville, TN 37202
mary.mccullohs@ag.tn.gov
(615) 741-8126

# TABLE OF CONTENTS

TABLE OF AUTHORITIES............................................................................ii

STATEMENT REGARDING ORAL ARGUMENT ...............................vi

STATEMENT OF ISSUES............................................................................vii

INTRODUCTION...........................................................................................viii

STATEMENT OF THE CASE ......................................................................1

    I.  Legal Background .................................................................................1

    II.  Factual Background ...........................................................................3

        A.  The State Prosecution ....................................................3

        B.  This Federal Lawsuit......................................................6

SUMMARY OF THE ARGUMENT .............................................................8

STANDARD OF REVIEW..............................................................................9

ARGUMENT .....................................................................................................9

    I.  General Helper and ADA Evins Are Entitled to Absolute
        Immunity...........................................................................................9

        A.  Receiving and reviewing evidence falls within
           prosecutorial immunity..............................................12

        B.  Drafting and presenting an indictment to the
           grand jury is protected by absolute immunity. ...........15

        C.  Decisions made in the normal course of litigation
           are protected by absolute immunity...........................19

    II.  Alternatively, Defendants are Entitled to Qualified
        Immunity..........................................................................................21

CONCLUSION .................................................................................................27

CERTIFICATE OF COMPLIANCE........................................................28

CERTIFICATE OF SERVICE....................................................................28

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...................................................................... 9, 16

*Barnes v. Wright,*
449 F.3d 709 (6th Cir. 2006)............................................................ 26

*Brown v. Giles,*
95 F.4th 436 (6th Cir. 2024) (Thapar, J.) ....................................... 24

*Buckley v. Fitzsimmons,*
509 U.S. 259 (1993).............................................................. *passim*

*Burns v. Reed,*
500 U.S. 478 (1991)............................................................... 1, 2, 14

*Codrigan v. Dolak,*
142 F.4th 884 (6th Cir. 2025) .......................................................... 22

*Crawford v. Tilley,*
15 F.4th 752 (6th Cir. 2021) ............................................................ 23

*Drake v. Howland,*
463 F. App'x 523 (6th Cir. 2012)...................................................... 15

*Grant v. Hollenbach,*
870 F.2d 1135 (6th Cir. 1989).......................................................... 11

*Hall v. Navarre,*
118 F.4th 749 (6th Cir. 2024) ..................................................... 23, 24

*Hall v. Williamsburg,*
2017 WL 2274327 (E.D. Ky. May 24, 2017),
*aff'd,* 768 F. App'x 366 (6th Cir. 2019) .......................................... 15

*Higgason v. Stephens,*
288 F.3d 868 (6th Cir. 2002)....................................................... 17, 25

*Howell v. Sanders,*
  668 F.3d 344 (6th Cir. 2012) .................................................................. 14

*Imbler v. Pachtman,*
  424 U.S. 409 (1976) ..................................................................... *passim*

*Ireland v. Tunis,*
  113 F.3d 1435 (6th Cir. 1997) .......................................... 10, 13, 17, 20

*Jackson v. City of Cleveland,*
  64 F.4th 736 (6th Cir. 2023) ................................................................ 22

*Kalina v. Fletcher,*
  522 U.S. 118 (1997) ...................................................................... 1, 15

*King v. Betts,*
  354 S.W.3d 691 (Tenn. 2011) .............................................................. 26

*Latits v. Phillips,*
  878 F.3d 541 (6th Cir. 2017) .............................................................. 23

*Lucas v. State,*
  141 S.W.3d 121 (Tenn. Ct. App. 2004) ............................................... 24

*MacMaster v. Busacca,*
  No. 2:21-cv-11052, 2025 WL 308123
  (E.D. Mich. Jan. 27, 2025) ........................................................ 18, 19

*Malley v. Briggs,*
  475 U.S. 335 (1986) ...................................................................... 2, 16

*McGee v. Best,*
  106 S.W.3d 48 (Tenn. Ct. App. 2002) ................................................ 27

*Mitchell v. Forsyth,*
  472 U.S. 511 (1985) ........................................................................... 23

*Mullenix v. Luna,*
  577 U.S. 7 (2015) ...................................................................... 25, 26

*Pearson v. Callahan*,
 555 U.S. 223 (2009)..................................................................23

*Price v. Montgomery Cnty., Ky.*,
 72 F.4th 711 (6th Cir. 2023) ......................................... 11, 26

*Prince v. Hicks*,
 198 F.3d 607 (6th Cir. 1999)..................................................12

*Reguli v. Russ*,
 109 F.4th 874 (6th Cir. 2024) ..................................................6

*Reichle v. Howards*,
 566 U.S. 658 (2012)................................................................23

*Rieves v. Town of Smyrna*,
 959 F.3d 678 (6th Cir. 2020).................................................10

*Rouse v. Stacy*,
 478 F. App'x 945 (6th Cir. 2012)..........................................18

*Shell v. State*,
 893 S.W.2d 416 (Tenn. 1995).................................................10

*Smith v. Wayne Cnty., Mich.*,
 147 F.4th 613 (6th Cir. 2025) ................................... 11, 14, 16, 17, 20

*Spadafore v. Gardner*,
 330 F.3d 849 (6th Cir. 2003).................................................27

*Spalding v. Vilas*,
 161 U.S. 483 (1896)................................................................18

*Spurlock v. Thompson*,
 330 F.3d 791 (6th Cir. 2003).................................................15

*State v. Hancock*,
 678 S.W.3d 226 (Tenn. Ct. App. 2023) ....................... *passim*

*State v. Reguli*,
 No. M2022-00143-CCA-R3-CD, 2024 WL 913212
 (Tenn. Crim. App. Mar. 4, 2024) .............................5, 6, 26

*Sterling Hotels, LLC v. McKay,*
  71 F.4th 463 (6th Cir. 2023) ............................................... 22

*Stump v. Sparkman,*
  435 U.S. 349 (1978)........................................................... 18

*Summers v. Leis,*
  368 F.3d 881 (6th Cir. 2004).............................................. 22

*Sykes v. Anderson,*
  625 F.3d 294 (6th Cir. 2010).............................................. 25

*Trozzi v. Lake Cnty.,*
  29 F.4th 745 (6th Cir. 2022) .............................................. 24

*Watkins v. Healy,*
  986 F.3d 648 (6th Cir. 2021)................................................. 9

*Watson's Carpet & Floor Coverings, Inc. v. McCormick,*
  247 S.W.3d 169 (Tenn. Ct. App. 2007) .............................. 26

## Statutes

Tenn. Code Ann. § 8-7-103 ....................................................... 19

## Other Authorities

Fed. R. App. P. 34(a)(2)(B) ........................................................ vi

Fed. R. Civ. P. 12(b)(6) ......................................................... 7, 9

# STATEMENT REGARDING ORAL ARGUMENT

The district court's dismissal of District Attorney General Helper[1] and Assistant District Attorney General Evins from this action was based on clear applications of well-settled law, so oral argument is unlikely to assist this Court in addressing the issues on appeal. *See* Fed. R. App. P. 34(a)(2)(B).

---

[1] Kimberly Helper passed away in March 2023. Defendant-Appellee Estate of Kimberly Helper will be referred to as "District Attorney General Helper" or "General Helper."

# STATEMENT OF ISSUES

Whether the district court properly dismissed District Attorney General Helper and Assistant District Attorney General Evins based on absolute prosecutorial immunity because they acted solely as advocates for the State in prosecuting Connie Reguli and Wendy Hancock for crimes involving custodial interference.  And, alternatively, whether Defendants are entitled to qualified immunity when Plaintiffs point to no clearly established law that was violated.

**INTRODUCTION**

This is a run-of-the-mill prosecutorial immunity case. Plaintiffs, Connie Reguli and Wendy Hancock, were convicted of custodial interference crimes stemming from Reguli's representation of Hancock in state court custody proceedings. Compl., R. 1, Page ID # 2–6. Both sought to evade a court order to place Hancock's child in foster case. *See State v. Hancock*, 678 S.W.3d 226, 234 (Tenn. Ct. App. 2023). Reguli hid her client at her house to evade a police search for Hancock's daughter. *Id*. Although Tennessee Courts described this behavior as "troubling" their convictions were ultimately reversed on appeal due to incorrect jury instructions. *Id.* at 240.

Since that appeal, Plaintiffs have launched this sprawling federal lawsuit. They sued nearly everyone involved in their indictments and convictions, alleging various civil rights violations and a conspiracy to violate their rights. Their claims against District Attorney General Helper and Assistant District Attorney General Evins, the two prosecutors in the case, essentially boil down to a disagreement over whether an indictment should have been brought. Compl., R. 1, Page ID # 2–3.

That attack on core prosecutorial functions never leaves the starting gate. The Supreme Court has been clear, the "decision to bring an indictment" is one absolute prosecutorial immunity protects "whether [a prosecutor] has probable cause or not." *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 n.5 (1993). Both prosecutors are entitled to absolute immunity for their advocacy in the criminal cases against Plaintiffs.

The district court below recognized Helper and Evins' actions to be run-of-the-mill advocacy that entitled them to absolute immunity, dismissing all federal and state claims against them in respective orders. Mem. Op., R. 43, Page ID # 348–357; Dismissal Order, R. 68, Page ID # 611–613. This Court should affirm on those same grounds.

Alternatively, even if this court were to construe Defendants' actions as investigative or administrative, they are still entitled to qualified immunity. Plaintiffs do not come close to showing that any clearly established law was violated. Dismissal was proper.

## STATEMENT OF THE CASE

## I.     Legal Background

The doctrine of absolute immunity shields prosecutors "from § 1983 suits for damages" when they perform "activities intimately associated with the criminal phase of the judicial process." *Imbler v. Pachtman*, 424 U.S. 409, 420, 430 (1976).  This broad protection extends to activities like "initiating a prosecution," "appearing before a judge," "and presenting evidence in support of a motion for a search warrant." *Id.* at 431; *Burns v. Reed*, 500 U.S. 478, 491 (1991). In other words, absolute immunity protects "the prosecutor when serving as an advocate in judicial proceedings." *Kalina v. Fletcher*, 522 U.S. 118, 125 (1997).

Absolute immunity exists to protect the "proper functioning of the criminal justice system," not the individual prosecutor.  *Imbler*, 424 U.S. at 427–28.  Or said another way, "it is the interest in protecting the proper functioning of the office, rather than the interest in its occupant, that is of primary importance." *Kalina*, 522 U.S. at 125.  And the criminal justice system will not properly function if one of its "central actor[s]," the prosecutor, cannot "vigorous[ly] and fearless[ly]" fulfill the "pressing duty

1

of enforcing the criminal law." *Malley v. Briggs*, 475 U.S. 335, 343 (1986); *see Imbler*, 424 U.S. at 425, 427.

Prosecutorial independence is the key to "vigorous and fearless" prosecution, and absolute immunity protects such independence in two key respects. *Imbler*, 424 U.S. at 427. It alleviates the prosecutor from factoring in his own "potential liability" into his decision-making. *Buckley*, 509 U.S. at 270 n.4. And it avoids "a deflection of the prosecutor's energies from his public duties." *Imbler*, 424 U.S. at 423.

A prosecutor must "exercise his best judgment both in deciding which suits to bring and [how to conduct] them in court." *Id.* at 424. But if a prosecutor must work under the constant "fear of [§ 1983 suits], it would undermine the performance of his duties by forcing him to consider his own potential liability when making prosecutorial decisions." *Buckley*, 509 U.S. at 270 n.4 (cleaned up). Thus, such "vexatious litigation would have an untoward effect on the independence of the prosecutor." *Burns*, 500 U.S. at 492.

An endless barrage of § 1983 suits would also divert a prosecutor's "energy and attention" away from his core duties. *Imbler*, 424 U.S. at 425. These suits would indeed be frequent because "a defendant often

will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate." *Id.* Thus, affording only qualified immunity to prosecutors "would require a virtual retrial of the criminal offense in a new forum," draining the prosecutor's "energy and attention" from his core duties. *Id.*

At bottom, "the alternative of qualifying a prosecutor's immunity would disserve the broader public interest." *Id.* at 427. As Judge Learned Hand famously explained, "it is better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." *Id.* at 428 (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949)).

## II.   Factual Background

### A.   The State Prosecution

Wendy Hancock is the mother of three children, two of whom were the subject of a Department of Children's Services (DCS) investigation for potential abuse or neglect. Compl., R. 1, Page ID # 2; *Hancock*, 678 S.W.3d at 232–33. In August 2018, DCS obtained a court order to remove Hancock's children from her custody. Compl., R. 1, Page ID # 18–20.

Before DCS could act on the order, Hancock and her daughter met her attorney, Connie Reguli, at a hotel. Compl., R. 1, Page ID # 7, 11, 20–21. From there, Hancock and her daughter were taken to Reguli's home. Compl., R. 1, Page ID # 20–21. Hancock later admitted that she knew of both the court order placing her daughter in DCS custody and of an endangered-child alert from the Tennessee Bureau of Investigation issued for her daughter — both of which she ignored on the advice of Reguli. *See Hancock*, 678 S.W.3d at 234. Two days later, local police discovered their hideout and placed Hancock's daughter in foster care. Compl., R. 1, Page ID # 21, 23.

DCS attorney Tracy Hetzel and Brentwood P.D. Detective Lori Russ soon began an investigation into Reguli and Hancock's efforts to thwart the removal order. Compl., R. 1, Page ID # 2, 25. ADA Evins would later meet with both of them to review collected evidence. Compl., R. 1, Page ID # 43. Around this time, Hetzel gave video recordings from the hotel where Plaintiffs had rendezvoused to General Helper's office. Compl., R. 1, Page ID # 43. A few months later, Detective Russ's investigative file was given to General Helper and ADA Evins. Compl., R. 1, Page ID # 25, 43.

Reguli and Hancock were criminally indicted. Compl., R. 1, Page ID # 26. The indictment charged Hancock with one count of Custodial Interference. Exhibit to Compl., R. 1-1, Page ID # 79. The indictment charged Reguli with one count of Facilitation of Custodial Interference and two counts of Accessory After the Fact. Exhibit to Compl., R. 1-1, Page ID # 78–79.

Reguli and Hancock unsuccessfully moved to dismiss the indictment for its failure to charge every element of the offenses. Compl., R. 1, Page ID # 33; *see State v. Reguli*, No. M2022-00143-CCA-R3-CD, 2024 WL 913212, at *5 (Tenn. Crim. App. Mar. 4, 2024). Though Hancock and the prosecution submitted virtually identical jury instructions, the trial court disagreed and removed an essential element of custodial interference. Compl., R. 1, Page ID # 34; *Hancock*, 678 S.W.3d at 237. After jury trials, Reguli and Hancock were found guilty. Compl., R. 1, Page ID # 36, 44. Both convictions were overturned on appeal. *Hancock*, 678 S.W.3d at 240; *Reguli*, 2024 WL 913212, at *6. The court found the trial judge had incorrectly instructed the jury. *Hancock*, 678 S.W.3d at 240; *Reguli*, 2024 WL 913212, at *4. With respect to the prosecutors, the court did not find the indictment itself should have been dismissed.

5

*Hancock*, 678 S.W.3d at 236; *see Reguli*, 2024 WL 913212, at *5. To the contrary, it concluded that under Tennessee law "the indictment was sufficient." *Hancock*, 678 S.W.3d at 236; *see Reguli*, 2024 WL 913212, at *5–6.

Reguli has since filed at least one other federal lawsuit stemming from these facts, asserting First Amendment violations against Detective Russ. *Reguli v. Russ*, 109 F.4th 874, 877 (6th Cir. 2024). That suit was dismissed as untimely. *Id.* at 876.

**B.    This Federal Lawsuit.**

A few months after prevailing in their state criminal appeals, Plaintiffs filed the underlying lawsuit against a host of parties involved in their indictment and prosecution. Plaintiffs generally asserted that Helper and Evins directed the investigation of Plaintiffs, knowingly drafted a faulty indictment, and prosecuted Plaintiffs without probable cause. Compl., R. 1, Page ID # 2–3.

Against Helper and Evins, Plaintiffs asserted Fourth Amendment violations described as malicious prosecution, deprivation of liberty without probable cause, fabricated evidence, substantive due process, and vexatious prosecution, along with Fourteenth Amendment violations

6

described as prosecutorial misconduct. Compl., R. 1, Page ID # 59–67. Plaintiffs also alleged all defendants conspired to violate their civil rights under the Fourth and Fourteenth Amendments. Compl., R. 1, Page ID # 67–68. Last, they asserted pendant state claims for malicious prosecution, intentional infliction of emotional distress, abuse of process, and civil conspiracy to commit these torts. Compl., R. 1, Page ID # 71–72. Plaintiffs sought monetary damages from all defendants. Compl., R. 1, Page ID # 73–76.

General Helper and ADA Evins moved to dismiss all claims against them under Fed. R. Civ. P. 12(b)(6). The district court dismissed all federal claims because of absolute prosecutorial immunity. Mem. Op., R. 43, Page ID # 348–357 (dismissing federal claims); Dismissal Order, R. 68, Page ID # 611–613 (dismissing state claims).

Plaintiffs timely filed a Notice of Appeal to this Court from the orders granting dismissal to all defendants. Notice of Appeal, R. 72, Page ID # 645. As to the prosecutors, Plaintiffs now appeal only the dismissal of the malicious prosecution claims and the conspiracy claims. Appellants' Br., Page ID # 33–34.

## SUMMARY OF THE ARGUMENT

The district court properly dismissed General Helper and ADA Evins based on absolute prosecutorial immunity. Every action they took was core prosecutorial behavior — they reviewed evidence gathered by investigators, they brought an indictment to the grand jury, and they engaged in trial advocacy preparation. Each of these is intimately associated with the judicial process, and the prosecutor's role as advocate. At no time did they engage in any investigative or non-advocacy-based behavior.

Plaintiffs' arguments to the contrary are merely conclusory allegations about ill-will or improper motive. But because at all times the prosecutors were acting in an advocatory function, they are cloaked in absolute immunity.

Alternatively, Helper and Evins are entitled to qualified immunity. As the district court properly dismissed on absolute immunity grounds there is no need to reach qualified immunity. But even if this Court were to now do so, Plaintiffs do not come even close to showing that a clearly established law was violated. In fact, any clearly established law relating to prosecutors is consciously absent from their brief. To the extent there

8

is clearly established law, it runs the other way, showing the prosecutors are entitled to immunity.

## STANDARD OF REVIEW

The Court reviews de novo dismissals made pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, construing the complaint in the light most favorable to the plaintiff and accepting as true all well-pleaded factual allegations. *Watkins v. Healy*, 986 F.3d 648, 660 (6th Cir. 2021). The Court must determine whether such allegations "state a claim for relief that is plausible on its face." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations pled are insufficient unless a court is able "to draw the reasonable inference that the defendant is liable for the misconduct alleged" and there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

I. **General Helper and ADA Evins Are Entitled to Absolute Immunity.**

The actions of General Helper and ADA Evins were *solely* prosecutorial in nature, therefore, the district court properly found that

9

they enjoy absolute immunity from both Plaintiffs' federal and state-law claims. Mem. Op., R. 43, Page ID # 350–356; Dismissal Order, R. 68, Page ID # 613. The same absolute immunity afforded prosecutors in the § 1983 context also protects them against Tennessee state-law claims. *Shell v. State*, 893 S.W.2d 416, 421 (Tenn. 1995).

"A prosecutor is entitled to absolute immunity when [he] acts 'as an advocate for the State' and engages in activity that is 'intimately associated with the judicial phase of the criminal process.'" *Rieves v. Town of Smyrna*, 959 F.3d 678, 691 (6th Cir. 2020) (quoting *Prince v. Hicks*, 198 F.3d 607, 611 (6th Cir. 1999)). Although "initiating a prosecution" and "presenting the [government's] case" are at the heart of prosecutorial immunity, *Imbler*, 424 U.S. at 430–31, the Supreme Court has also recognized that "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom." *Id.* at 431 n.33. Determining prosecutorial immunity is an inquiry that looks to the nature of the function performed, and absolute immunity attaches to all acts "intimately associated with the judicial process." *Ireland v. Tunis*, 113 F.3d 1435, 1445 (6th Cir. 1997). When assessing individual acts, the

10

"analytical key" to prosecutorial immunity is advocacy, which includes both in-court presentations and preparatory activities. *Smith v. Wayne Cnty., Mich.*, 147 F.4th 613, 619 (6th Cir. 2025).

Conduct not intimately associated with the judicial process, and thus not giving rise to absolute immunity, includes "investigative efforts to obtain an arrest warrant, authorize wiretaps, or advise the police." *Price v. Montgomery Cnty., Ky.*, 72 F.4th 711, 719–20 (6th Cir. 2023). "A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley*, 509 U.S. at 273.

Plaintiffs only challenge conduct that is intimately associated with the judicial process. Plaintiffs' allegations must be pared down to remove subjective allegations of intent and error, for prosecutors are immune from liability even if their acts were wrongful, malicious, or overturned on appeal. *Grant v. Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989). What's left are actions that were necessary for Helper and Evins to initiate and maintain Plaintiffs' prosecution. As described in the complaint, Helper and Evins' conduct can be categorized as (A) receiving

11

evidence, (B) drafting and presenting the indictment, and (C) litigation decisions.

### A. Receiving and reviewing evidence falls within prosecutorial immunity.

The complaint's allegations demonstrate that Helper and Evins received and reviewed evidence from third parties. Compl., R. 1, Page ID # 25, 43. As the district court observed, the complaint "does not allege facts suggesting that Evins directed or participated" in evidence collection. Mem. Op., R. 43, Page ID # 351. The complaint does not allege that they performed investigative functions such as gathering evidence on their own, an action typically performed by a police officer for which absolute immunity would not attach. *Prince*, 198 F.3d at 612. Rather, Helper and Evins merely received Detective Russ's investigative file, received Hetzel's recordings, and met with investigators to review evidence already collected. Compl., R. 1, Page ID # 25, 43. Though these acts were outside the courtroom and were preparatory, they are nonetheless key to advocacy, as "[p]reparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence." *Imbler*, 424 U.S. at 431 n.33. Helper and

Evins were thus correctly granted absolute immunity for evaluating the evidence presented by law enforcement. *See Ireland*, 113 F.3d at 1447.

Plaintiffs resist this straightforward conclusion on two grounds. *First*, they use their appellate brief to re-characterize the complaint's allegations. *Second*, they make the legal contention that Defendants could not have been acting as advocates because some activity took place before the existence of probable cause. Neither avail.

1. On appeal, Plaintiffs re-characterize assertions from their complaint, claiming that Helper's pre-indictment review of the evidence was for the purpose of initiating an investigation. Appellant's Br., Page ID # 19, 52 (asserting that Evins met with investigators in September and October 2018 to initiate an investigation). But this is incongruous with the cited sections of the complaint. The complaint does not include Helper in the September 2018 meeting. Compl., R. 1, Page ID # 25. And the complaint states that Evins met with investigators to review the evidence *already* collected. Compl., R. 1, Page ID # 43. The complaint alleges that Helper and Evins received a completed investigative file. Compl., R. 1, Page ID # 25. These appellate re-characterizations are bald

attempts to insert Helper and Evins into the investigatory process, an attempt not supported by the allegations in the complaint.

2.     Plaintiffs claim that Helper and Evins were not acting as advocates because their actions took place before the existence of probable cause.   Appellants' Br., Page ID # 55–58.   But Plaintiffs' emphasis on the timing of probable cause is misplaced.  Although timing "may inform what the function of the activity is . . . it does not control the activity's categorization." *Smith*, 147 F.4th at 622.  Instead, the "driving consideration" remains the nature of the activity in question. *Id.*  Said another way, the existence or not of probable cause is "not determinative," for "the inquiry remains one of function." *See Howell v. Sanders*, 668 F.3d 344, 350 (6th Cir. 2012).

That Helper or Evins reviewed evidence gathered by others, before an indictment issued, does not change the prosecutorial nature of those acts.  The inquiry always remains squarely on whether the challenged acts are functions that are intimately associated with the judicial phase. *Howell*, 668 F.3d at 350.  And the Supreme Court has been clear that applies to activities "preliminary to the initiation of a prosecution." *Imbler*, 424 U.S. at 431 n.33; *see Burns*, 500 U.S. at 491–92 (pre-

14

indictment search-warrant proceedings); *Kalina*, 522 U.S. at 129 (pre-indictment arrest-warrant proceedings).[2] Indeed, a prosecutor must necessarily review the evidence gathered by law enforcement officers in determining whether to seek an indictment. At bottom, Plaintiffs believe they should have never been charged with a crime. But that has nothing to do with the functional absolute immunity inquiry.

### B. Drafting and presenting an indictment to the grand jury is protected by absolute immunity.

The district court correctly found that the drafting and presentment of the indictment to the grand jury are functions intimately associated with the judicial process and thus give rise to absolute immunity. Mem. Op., R. 43, Page ID # 353. The "decision to bring an indictment" is one prosecutorial immunity protects "whether [a prosecutor] has probable cause or not." *Buckley*, 509 U.S. at 274 n.5; *see also Drake v. Howland*, 463 F. App'x 523, 527-28 (6th Cir. 2012). That is because drafting an

---

[2] *Spurlock v. Thompson*, 330 F.3d 791 (6th Cir. 2003), is not to the contrary. That case involved the threats to coerce witnesses into testifying — an investigative function. *Id.* at 798–99. And its statement that there can be no immunity "prior to indictment" was "made in dicta and is also at odds with more recent Sixth Circuit decisions affording absolute immunity to actions taken before the defendant had been indicted." *Hall v. Williamsburg*, 2017 WL 2274327 at *12 n.11 (E.D. Ky. May 24, 2017), *aff'd,* 768 F. App'x 366 (6th Cir. 2019).

indictment and presenting it to the grand jury are "but the first step[s] in the process of seeking a conviction." *Malley*, 475 U.S. at 343; *Buckley*, 509 U.S. at 274 n.5. They are some of the "various preparatory activities outside the courtroom" that are necessary for advocacy. *Smith*, 147 F.4th at 619. The Supreme Court has been clear; Helper and Evins are absolutely immune for preparing and presenting Plaintiffs' indictments.

Plaintiffs, again, push back with a factual and a legal attack. They (1) make the allegation that drafting the indictment is administrative, and (2) assert that Defendants were "never vested with the authority of a prosecutor." Appellants' Br., Page ID # 52. Both fail.

1. Plaintiffs argue that the drafting of the indictment is an administrative act. Appellants' Br., Page ID # 19, 58. The district court correctly dismissed this characterization as legally conclusive. Mem. Op., R. 43, Page ID # 353. A party cannot dress up a legal conclusion as a fact just to avoid a motion to dismiss. *See Iqbal*, 556 U.S. at 678.

Even beyond its conclusory nature, Plaintiffs labeling indictment-drafting as "administrative" is unrelated to the absolute immunity analysis. Advocacy — which includes various preparatory activities outside the courtroom — is the touchstone of the analysis. *Smith*, 147

16

F.4th at 619. Just as it would attach to Helper and Evins' presentation to the grand jury, absolute immunity "will likewise attach to administrative or investigative acts necessary for a prosecutor to initiate or maintain the criminal prosecution." *Ireland*, 113 F.3d at 1447.

2. Plaintiffs also offer the odd argument that Helper and Evins were "never vested with the authority of a prosecutor." Appellants' Br., Page ID # 52. In their mind, Helper and Evins are not immune because they "knew there was no crime." Appellant's Br., Page ID # 55.

An allegation of malice or ill-will will not overcome prosecutorial immunity. This Court has already foreclosed such an argument in *Higgason v. Stephens*, 288 F.3d 868 (6th Cir. 2002). There, the plaintiff argued for a bright line rule that a prosecutor who brings charges "on absolutely no admissible evidence that a crime has been committed, or could have been committed" cannot be absolutely immune from liability. *Id.* at 877. But this Court reject this "skewed" interpretation and applied the well-settled functional approach. *Id.* No matter Plaintiffs' characterization of Helper and Evins' mental state, prosecutors are immune for acts such as "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation

17

at trial or before a grand jury after a decision to seek an indictment has been made." *Id.* at 878 (quoting *Buckley*, 509 U.S. at 273).

Plaintiffs also point to *Rouse v. Stacy*, 478 F. App'x 945 (6th Cir. 2012), to make the same point. Appellants' Br., Page ID # 55. But *Rouse* is not instructive here. In *Rouse*, the prosecutor ordered a jailer to violently assault the incarcerated plaintiff. *Id.* at 946. But directing jailers to beat a criminal defendant has nothing to do with advocacy on behalf of the State. *Id.* at 954. The complaint's allegations on the other hand, only touch on acts intimately associated with a prosecution, such as reviewing evidence, bringing an indictment, and trial preparation.

Plaintiffs' other cited authorities are equally misplaced. Appellants' Br., Page ID # 55. They all turn on prosecutors acting *far* outside their traditional role, and nothing about an alleged defect in the legal theory of the prosecution. *See Spalding v. Vilas*, 161 U.S. 483, 499 (1896) (finding a postmaster general immune from suit because personal motives behind official acts are "wholly immaterial"); *Stump v. Sparkman*, 435 U.S. 349, 359–60 (1978) (finding a circuit court judge did not act in clear absence of all jurisdiction because his court was one of general jurisdiction); *MacMaster v. Busacca*, No. 2:21-cv-11052, 2025 WL

18

308123, at *2, 12 (E.D. Mich. Jan. 27, 2025) (describing prosecutor acting outside of geographic jurisdiction).

The complaint, taken as true, only alleges a series of acts within the jurisdiction of Helper and Evins: receiving evidence, preparing an indictment, presenting that evidence and indictment to the grand jury, and otherwise advocating in the judicial process. *See* Tenn. Code Ann. § 8-7-103 (providing that District Attorneys General and Assistant District Attorneys General shall prosecute in the courts and "perform all prosecutorial functions attendant thereto"). As the district court observed, Helper and Evins' decisions were taken in their capacity as advocates for the State, even if they can be called "ill-advised or malicious." Mem. Op., R. 43, Page ID # 353. Because Helper and Evins acted as advocates within their jurisdiction, the finding of absolute immunity should be affirmed.

### C. Decisions made in the normal course of litigation are protected by absolute immunity.

The remainder of Plaintiffs' allegations against Helper and Evins stem from "litigation decisions" that "fall squarely within the 'adversarial arena.'" Mem. Op., R. 43, Page ID # 354. These allegations include filing a motion, conducting discovery, and scheduling trial, as well as the actual

19

advocacy performed within the trial court and court of appeals. *See, e.g.*, Compl., R. 1, Page ID # 29–30, 32–37. Such activities are clearly "intimately associated with the judicial phase of the criminal process," and entitle Helper and Evins to absolute immunity. *Ireland*, 113 F.3d at 1443.

Plaintiffs allege that Evins interviewed Hancock and her daughter in preparation for the trial of Reguli. Compl., R. 1, Page ID # 39, 42. But these interviews were not for the purpose of fact-finding, but rather to prepare witnesses for trial. Compl., R. 1, Page ID # 39, 42. This Court recently clarified a prosecutor is entitled to absolute immunity for this type of pre-trial conduct so long as they are not engaged in a new investigation for additional facts. *See Smith,* 147 F.4th at 621–22. And out-of-court efforts to control the presentation of a witness's testimony are entitled to absolute immunity, as they are fairly within the prosecutor's function as an advocate. *Buckley*, 509 U.S. at 273. Despite Plaintiffs' coloring of the interviews, they do not allege that Evins sought new evidence. Compl., R. 1, Page ID # 39, 42. The allegations are just of the pre-trial preparation that *Smith* directly addressed. 147 F.4th at

621–22. The district court was right to accord absolute immunity to this alleged conduct. Mem. Op., R. 43, Page ID # 354.

* * *

At day's end, this is a straightforward prosecutorial immunity case. All of Plaintiffs' claims boil down to a deep dissatisfaction that this prosecution was ever instituted. Whatever the merits of that view, it runs headlong into prosecutorial immunity. The Supreme Court has been clear, absolute immunity must be applied in cases like this to protect the "proper functioning of the criminal justice system," regardless of the Court's thoughts about the actions of an individual prosecutor. *Imbler*, 424 U.S. at 427–28.

## II. Alternatively, Defendants are Entitled to Qualified Immunity.

Plaintiffs assert that General Helper and ADA Evins are not entitled to qualified immunity. Appellants' Br., Page ID # 60. They correctly note, however, that the district court did not take up the issue as to Helper and Evins, because it rightly granted them absolute prosecutorial immunity. Appellants' Br., Page ID # 60. Because that decision was correct, this Court need not reach the issue of qualified immunity.

But even if this Court were to find no absolute immunity, Plaintiffs still cannot succeed. As Defendants noted below, even "if the alleged act was 'investigatory or administrative in nature,' the prosecutor will be entitled to qualified immunity." Second Mot. Dismiss, R. 48, Page ID # 388. Under no circumstances are Plaintiffs able to overcome Helper and Evins' alternative invocation of qualified immunity. It is of no moment that the district court did not dismiss on these grounds because this Court "may affirm the district court's determination on any grounds, including grounds not relied upon by the district court." *Codrigan v. Dolak*, 142 F.4th 884, 891 n.1 (6th Cir. 2025) (quoting *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012)).

"[T]he defense of qualified immunity is a threshold question." *Summers v. Leis*, 368 F.3d 881, 886 (6th Cir. 2004). At the pleadings stage, courts must ensure that a complaint plausibly alleges "that an official's acts violated the plaintiff's clearly established constitutional right." *Jackson v. City of Cleveland*, 64 F.4th 736, 746 (6th Cir. 2023). And courts must rule on that issue before requiring state officials to endure discovery. *Sterling Hotels, LLC v. McKay*, 71 F.4th 463, 466–67 (6th Cir. 2023). Indeed, "the driving force behind creation of the qualified

immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (cleaned up).

To overcome the "formidable" shield of qualified immunity, *Hall v. Navarre*, 118 F.4th 749, 759 (6th Cir. 2024), a plaintiff must show that the defendant violated legal rights that were "clearly established at the time of the challenged actions." *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985). The federal courts have identified two components to that standard, which they may analyze in any order. *See Pearson*, 555 U.S. at 236. The *first* component requires the "violation of a constitutional right," *id.* at 232. The *second* component looks to the clarity of the precedent establishing the constitutional right asking whether the binding authority is "material[ly]" "distinguishable" from the present case. *Latits v. Phillips*, 878 F.3d 541, 552–53 (6th Cir. 2017); *see Crawford v. Tilley*, 15 F.4th 752, 766 (6th Cir. 2021).

As to the second component: "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (cleaned up). This is a high bar. It

means "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quotation omitted). In other words, Plaintiffs must prove "it would have been clear to [Helper and Evins] that [their] 'actions were unlawful in the situation [they] confronted,'" at the time they confronted it. *Hall*, 118 F.4th at 759 (quoting *Lanman v. Hinson*, 529 F.3d 673, 688 (6th Cir. 2008)). To do so, Plaintiffs must show that closely analogous precedent has placed the constitutional question beyond debate. *Trozzi v. Lake Cnty.*, 29 F.4th 745, 761 (6th Cir. 2022). And they must "produce an on-point, binding case." *Brown v. Giles*, 95 F.4th 436, 439 (6th Cir. 2024) (Thapar, J.). Qualified immunity is available for state-law claims as well, and the burden of proving clearly established rights falls on Plaintiffs in that context, too. *Lucas v. State*, 141 S.W.3d 121, 134 (Tenn. Ct. App. 2004).

A Fourth Amendment claim for malicious prosecution requires Plaintiffs to establish: (1) a criminal prosecution was initiated against the plaintiffs and the defendants made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) as a consequence of a legal proceeding, the plaintiffs suffered a deprivation of liberty apart from the initial seizure;

24

and (4) the criminal proceeding must have been resolved in the plaintiffs' favor. *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010). So, in light of Defendants' invocation of qualified immunity, Plaintiffs must show that *each of the elements was clearly established*, and Defendants' "particular conduct" violated all of them. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quotation omitted).

Plaintiffs do not come close to clearing this hurdle. Taking everything in the complaint as true, Plaintiffs point to no case that clearly established their novel legal theory that not including all elements of a crime on a charging document is actionable malicious prosecution. Compl., R. 1, Page ID # 59. The reason they cannot do so is because none exists. That is not surprising, as this Court has already decided that a prosecutor is entitled to absolute immunity for their "professional evaluation of the evidence assembled, and for [their] presentation of that evidence to the grand jury." *Higgason*, 288 F.3d at 878. That makes sense, because the "decision to bring an indictment" is one prosecutorial immunity protects regardless of "whether [a prosecutor] has probable cause or not." *Buckley*, 509 U.S. at 274 n.5. That absence of clearly established law is fatal to both Plaintiffs' federal,

25

*Mullenix*, 577 U.S. at 12, and state-law claims. *King v. Betts*, 354 S.W.3d 691, 705 (Tenn. 2011).

To the extent there is clearly established law in this area, it shows that Defendants *are immune*. For example, on probable cause, "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer." *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006) (quoting *Higgason*, 288 F.3d at 877). And the indictment has been blessed by the Tennessee Court of Appeals. *Hancock*, 678 S.W.3d at 235; *Reguli*, 2024 WL 913212, at *5. So, if anything, it is clearly established that Plaintiffs cannot succeed on their malicious prosecution claim.

These fatal failures in Plaintiffs' theory of malicious prosecution also mean the conspiracy claims necessarily fail. After all, civil conspiracy is not an independent claim but only actionable where an underlying tort is actionable. *Price*, 72 F.4th at 726 (citing *Stricker v. Twp. of Cambridge*, 710 F.3d 350, 365 (6th Cir. 2013); *accord Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 179–80 (Tenn. Ct. App. 2007). Conspiracy claims must be pled with some degree

of specificity.  *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003).

The same standard applies for state-law claims.  *McGee v. Best*, 106

S.W.3d 48, 64 (Tenn. Ct. App. 2002).  As recognized by the district court,

the complaint "fails . . . to allege sufficient facts to establish Helper and

Evins' engagement in a conspiracy to violate the plaintiffs' constitutional

rights."  Mem. Op., R. 43, Page ID # 356

## CONCLUSION

For the reasons stated, the judgment of the district court granting

General Helper and ADA Evins' motions to dismiss should be affirmed.

Respectfully submitted,

JONATHAN SKRMETTI
*Attorney General and Reporter*

J. MATTHEW RICE
*Solicitor General*

*s/ Mary Elizabeth McCullohs*
MARY ELIZABETH MCCULLOHS
*Senior Assistant Attorney General*
JACOBS M. GILBERT
*Assistant Attorney General*
Office of the Tennessee Attorney
General & Reporter
P.O. Box 20207
Nashville, TN  37202
(615) 741-8126
Mary.McCullohs@ag.tn.gov
Counsel for Defendants-Appellees

# CERTIFICATE OF COMPLIANCE

I hereby certify that Defendants' brief complies with Federal Rules of Appellate Procedure and local type-volume limitations. This brief contains less than 13,000 words, having a total of 5,727 words (Statement of Issues through Conclusion).

*s/ Mary McCullohs*
MARY MCCULLOHS

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically on November 17, 2025. Copies of the filing will be served electronically through the Court's electronic system on all parties.

*s/ Mary McCullohs*
MARY MCCULLOHS

# ADDENDUM

| RE # | Page ID Range | Description |
| --- | --- | --- |
| 1 | 1–77 | Complaint |
| 23 | 144–46 | Motion to Dismiss for Failure to State a Claim by Def. Helper & Evins |
| 24 | 147–60 | Memorandum in Support of Motion to Dismiss by Def. Helper & Evins |
| 30 | 227–50 | Memorandum in Support of Response in Opposition to Helper & Evins' Motion to Dismiss |
| 43 | 336–74 | Memorandum Opinion |
| 47 | 379–81 | Motion to Dismiss for Failure to State a Claim by Def. Helper & Evins |
| 48 | 382–93 | Memorandum in Support of Motion to Dismiss by Def. Helper & Evins |
| 54 | 403–19 | Response in Opposition to Helper & Evins' Motion to Dismiss |
| 68 | 611–13 | Dismissal Order |
| 69 | 614–42 | Memorandum Opinion |
| 70 | 643 | Final Order |
| 72 | 645–47 | Notice of Appeal |